# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| ROY WALLACE,<br>Petitioner, | Civil Action No. 1:07-cv-406 |
| vs. | Weber, J.<br>Black, M.J. |
| ERNIE MOORE, WARDEN,<br>Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, a state prisoner, brings this case *pro se* seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The case is now before the Court upon the amended petition (Doc. 7), respondent's return of writ and exhibits thereto (Doc. 10), and petitioner's "request for abeyance." (Doc. 17).

## I. PROCEDURAL HISTORY

This case involves the following facts, as summarized by the First District Ohio Court of Appeals:[1]

> The evidence, much of it gained from statements that Wallace had made to police, established that he and Gudger went to a convenience store located in Newtown, Ohio, shortly after midnight on March 21, 2004. They made no purchases. Instead, Gudger used the restroom while Wallace spoke with Chisenhall about pain relievers. A customer observed a handgun in Gudger's pants pocket. The two left the store, but returned one hour later. They parked a pickup truck in the lot of a closed business adjacent to the convenience store.
>
> As they exited from the truck, Gudger told Wallace, "Let's go in and see what this guy's got." Wallace then observed Gudger load and cock a nine-millimeter pistol. Nonetheless, Wallace accompanied Gudger into the store. With the gun drawn, Gudger demanded money from Chisenhall. Despite Chisenhall's plea, Gudger

---

[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

> shot him once. After recovering one $10 from the cash register, Gudger forced the wounded Chisenhall into the store office, demanding that he open the safe. Gudger took less than $50 from Chisenhall. While in the office, Gudger fired at least four more shots, killing Chisenhall.
>
> Gudger and Wallace fled from the store driving to another convenience store in Columbia Township where Gudger gave Wallace part of the cash. Wallace took the money but he claimed to have returned it to Gudger. Wallace also told police that he threw the murder weapon from the vehicle during the trip to the second store. In fact, the handgun used to kill Chisenhall was ultimately found hidden inside the bathroom wall of Wallace's apartment.

(Doc. 10, Exh. 8 at 1-2).

Petitioner was indicted by the 2004 Term of the Hamilton County, Ohio Grand Jury on one count of murder in violation of Ohio Rev. Code § 2903.02(B), and one count of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1). (Doc. 10, Exh. 1). Petitioner waived his right to a jury trial and, after a trial to the court, was found guilty on both charges. On March 28, 2005, petitioner was sentenced to consecutive terms of fifteen years to life on the murder conviction and nine years on the aggravated robbery conviction. (Doc. 10, Exh. 2).

Petitioner, through new counsel, filed a timely appeal to the First District Court of Appeals and presented two assignments of error:

> 1. The evidence was insufficient as a matter of law and/or against the manifest weight of the evidence to sustain appellant's convictions for murder and aggravated robbery.
>
> 2. The trial court erred as a matter of law by improperly sentencing appellant.

(Doc. 10, Exh. 6). The State filed a brief in response. (Doc. 10, Exh. 7). On May 31, 2006, the Court of Appeals affirmed the judgment of the trial court. (Doc. 10, Exh. 8).

Petitioner filed a *pro se* motion for delayed appeal to the Supreme Court of Ohio on September 5, 2006. (Doc. 10, Exh. 9). Petitioner noted he would raise the following issue if

2

granted an appeal:

> Ineffective Assistance of Appellate Counsel: where counsel failed to raise errors which were part of the record, and should have been raised on appeal. The errors were so egregious as to constitute violation of Constitutional Rights.

(Doc. 10, Exh. 9). Petitioner argued that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in not allowing petitioner to testify. (Doc. 10, Exh. 9). Petitioner also argued that the evidence of his guilt was insufficient and against the manifest weight of the evidence. (*Id.*). On October 5, 2005, the Supreme Court of Ohio denied the motion for delayed appeal. (Doc. 10, Exh. 10).

Meanwhile, on August 10, 2006, petitioner filed a *pro se* application to reopen the direct appeal pursuant to Ohio App. R. 26(B) in the First District Court of Appeals. Petitioner raised the following assignments of error:

> 1. Defendant-Appellant was denied effective assistance of appellate counsel where counsel failed to raise obvious errors on appeal (T.p. 319-22).
>
> 2. Trial court erred where it failed to address the issue of trial counsel's conduct (T.p. 319-22) affecting defendant's constitutional right to testify.
>
> 3. Trial court erred where it failed to comply with Ohio Revised Code Section 2923.03(E), and the conduct of the defendant before, during and after the offense.

(Doc. 10, Exh. 11). The Ohio Court of Appeals denied petitioner's application to reopen his direct appeal finding it barred by *res judicata*. (Doc. 10, Exh. 12). Petitioner did not pursue an appeal to the Supreme Court of Ohio.

On May 23, 2007, petitioner filed a petition for writ of habeas corpus in this federal court. (Doc. 1). On August 20, 2007, petitioner filed a motion to amend the petition for writ of habeas corpus (Doc. 7), which respondent did not oppose. The motion was granted. (Doc. 16). The

3

amended petition raises the following grounds for relief:

> **GROUND ONE**: Denied effective assistance of trial and appellate counsels where the error was obvious and part of the record to be raised on direct appeal.
>
> **Supporting Facts**: During a brief recess at trial, trial counsel stated off the record; she would walk out of the courtroom if I got on the witness stand to testify. At sentencing I stated on record what trial counsel had said which clearly affected my decision to testify (Tp. Vol. VII, Pgs. 319-22). Due to counsel's conduct (threats, inducement ) I didn't testify. the lack of my testimony did result in my conviction.
>
> **GROUND TWO:** Defendant /appellant was denied effective assistance of appellate counsel under the Sixth and fourteenth amendment where appellate counsel failed to raise the issue that trial court erred where it failed to comply with Ohio Revised Code section 2923.03(E)[2] which the defendant did not violate (Tp. Vol. VI, pgs. 298-99) see also, Interview Tp. of 3/25/04, Pg. 11 police interview.
>
> **GROUND THREE:** Denied effective assistance of appellate counsel where counsel failed to raise trial court's failure to comply with § 2923.03(E).
>
> **Supporting Facts**: Affirmative defense under this section was completely over looked when such facts are introduced at trial (Tp. Vol. VI, Pgs. 298-99) Where the defendant did not violate this section. The failure by the court to consider this element(s) proved highly prejudicious.
>
> **GROUND FOUR:** Insufficient evidence to sustain a conviction 2923.03(E).
>
> **Supporting Facts**: Absolutely no evidence whatsoever (Tp. 298) The record reflects substantially that Wallace repeatively (sic) terminated his alleged criminal purpose or complicity, when Wallace entered the store and said "No" afterwards. Wallace refused to accept money from Gudger, which Wallace believed was part of what was taken from the robbery. Wallace further indicated he wanted no part of what had occurred.

(Doc. 7).

---

[2] Ohio Revised Code § 2923.03(E) provides: "It is an affirmative defense to a charge under this section that, prior to the commission of or attempt to commit the offense, the actor terminated his complicity, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

## II. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). In addition, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established law or was based on an unreasonable determination of the facts of record. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

5

## III. GROUNDS ONE THROUGH FOUR OF THE AMENDED PETITION ARE PROCEDURALLY DEFAULTED AND WAIVED.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985). If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, *e.g.*, to make a contemporaneous objection, or

6

file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan*, 526 U.S. at 847-48; *Harris v. Reed*, 489 U.S. 255, 260-62 (1989); *McBee v. Grant*, 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989). The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In determining whether a state court rested its holding on a procedural default so as to bar

7

federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991)). Normally, a federal habeas court will find that a petitioner procedurally defaulted if the last state court rendering a decision makes a plain statement to that effect. *Harris,* 489 U.S. at 261. No such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court. *Id.* at 263 n. 9; *see also Teague v. Lane*, 489 U.S. 288, 297-298 (1989) (plurality opinion)("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the instant case, the Court finds that Grounds One through Four of the amended petition are procedurally defaulted and waived. Petitioner procedurally defaulted the ineffective assistance of appellate counsel claims raised in Grounds One, Two and Three of the petition. In petitioner's Rule 26(B) motion to reopen the direct appeal, petitioner asserted appellate counsel was ineffective for failing to present assignments of error challenging (1) trial counsel's

8

competence in inducing petitioner to waive his right to testify at trial (Ground One of the Amended Petition); (2) the trial court's failure to address the matter of trial counsel's conduct in inducing the waiver; and (3) the trial court's failure to "recognize and/or consider" as an affirmative defense petitioner's attempts to terminate his complicity in the crimes for which he was convicted (Grounds Two and Three of the Amended Petition). (Doc. 10, Exh. 11). The application to reopen the direct appeal was denied by the Ohio Court of Appeals on September 21, 2006. (Doc. 10, Exh. 12). Petitioner did not file a notice of appeal from the denial of his Rule 26(B) motion to the Supreme Court of Ohio. By not properly appealing the denial of his Rule 26(B) application to the Supreme Court of Ohio, petitioner committed a procedural default of his ineffective assistance of appellate counsel claim. Petitioner may not now file a delayed appeal under Rule II, Section 2(A)(4)(b), Rules of Practice of the Supreme Court of Ohio ("The provision for delayed appeal applies to appeals on the merits and does not apply to appeals involving postconviction relief. . . ."); *Morgan v. Eads*, 818 N.E.2d 1157 (Ohio 2004); *see also Lopez v. Wilson*, 426 F.3d 339, 351-53 (6th Cir. 2005) (*en banc*), *cert. denied*, 547 U.S. 1099 (2006). Therefore, there is no avenue of relief that remains available for petitioner to pursue in order to bring such claims to the attention of the state's highest court for consideration.

Petitioner committed a further procedural default of his ineffective assistance of appellate counsel claim when he failed to timely file a discretionary appeal to the Supreme Court of Ohio from the Ohio Court of Appeals' denial of his direct appeal and failed to show sufficient cause for his delayed appeal. The Supreme Court of Ohio's denial of petitioner's motion for delayed appeal constitutes an adequate and independent state ground to preclude federal habeas corpus review. *Bonilla v. Hurley*, 370 F.3d 494, 497(6th Cir.) (per curiam), *cert. denied*, 543 U.S. 989

9

(2004).

In *Bonilla*, the Sixth Circuit held in an analogous case that the Ohio Supreme Court's unexplained entry denying a motion for delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar federal habeas corpus review. 370 F.3d at 497. In so holding, the Sixth Circuit reasoned that "the applicable Ohio [Supreme Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla*, 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein).[3]

In the instant case, the Supreme Court of Ohio's decision is silent as to its reasons for denying petitioner's requested relief. (Doc. 10, Exh. 10). Therefore, the Court must assume that the state court would have enforced any applicable procedural bar. *Bonilla*, 370 F.3d at 497 (citing *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996)). Accordingly, petitioner's ineffective assistance of appellate counsel claims are barred by procedural default unless petitioner establishes cause and prejudice for the default or that a miscarriage of justice excuses the default.

Petitioner has failed to establish "cause" for his procedural default in the state courts. In his motion for leave to file a delayed appeal in the Supreme Court of Ohio, petitioner argued

---

[3] The *Bonilla* Court found:

> The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id.* A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id.* Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4)(c). Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.

*Bonilla*, 370 F.3d at 497.

10

as "cause" for his delayed filing that institutional rules limited his access to the prison law library and "free movement" within the institution. (Doc. 10, Exh. 9, Wallace Affidavit). In *Bonilla*, the Sixth Circuit rejected a similar argument holding that the petitioner failed to establish cause for his procedural default despite alleging a sudden departure of his attorney, ignorance of legal and procedural requirements, pro se status, and limited access to the prison's law library. 370 F.3d at 498.; *see also Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995) (*pro se* status before the Supreme Court of Ohio is insufficient to establish cause to excuse procedural default). Therefore, petitioner's argument does not establish cause for the default.

Since both cause and prejudice must be shown to excuse a procedural default, petitioner's failure to establish cause eliminates the need to consider prejudice. *Murray v. Carrier*, 477 U.S. 478, 494-95 (1986).

In addition to his ineffective assistance of appellate counsel claims, petitioner raises claims of ineffective assistance of trial counsel (Ground One) and insufficient evidence to convict (Ground Four). Petitioner's ineffective assistance of trial counsel claim was procedurally defaulted because it was not raised on direct appeal to the Ohio Court of Appeals. Petitioner's sufficiency of the evidence claim was procedurally defaulted by petitioner's failure to timely appeal to the Supreme Court of Ohio. *Bonilla*, 370 F.3d at 497. To the extent petitioner suggests his appellate counsel's ineffectiveness is cause for the procedural default, those claims have been procedurally defaulted and may not constitute cause for his other procedural defaults. *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000) (citing *Murray*, 477 U.S. at 488-89). Petitioner has not provided any other explanation as "cause" for his procedural default.

Nor has petitioner shown that if his claims are not considered on the merits a

11

"fundamental miscarriage of justice" will occur, that is, that the alleged constitutional violations "probably resulted in the conviction of one who is actually innocent" of the crimes charged. *See Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995); *cf. Souter v. Jones*, 395 F.3d 577, 597-602 (6th Cir. 2005). The actual innocence exception to the rule barring review of procedurally defaulted claims is premised on new, reliable evidence that was not available to the petitioner at trial. As explained by the Supreme Court:

> Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim. However, if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

*Schlup*, 513 U.S. at 316.

In this regard, petitioner's "request for abeyance" seeks a suspension of these habeas corpus proceedings to allow petitioner to pursue in state court a motion for leave for new trial based on "newly discovered evidence" which, according to petitioner, establishes his actual innocence. (Doc. 17). Petitioner presents the affidavit of Steven K. Wilson, a fellow inmate at the Lebanon Correctional Institution. (Doc. 17, attachment). The affidavit states, in pertinent part:

> On January 22, 2008, the Defendant Roy Wallace, while incarcerated, obtained probative information from another inmate whom informed Wallace that during a conversation with Wallace's co-defendant, Torino Gudger admitted to hiding the murder weapon used in the commission of a robbery/murder, in Newtown, Ohio hid the gun in Wallace's aprtment (sic) where Gudger had been living at the time of the offense. Gudger further stated the details where he hid the gun between the shower stall and the wall as Wallace slept.

12

*Id.* The affidavit further states that Wallace had no knowledge that the gun had been hidden in his residence and that Gudger's true plan was to kill his parents. *Id.* A second affidavit from one Gregory Sims states that Gudger was abusive towards his parents and made threats to do them harm. *Id.*

To establish a credible claim of actual innocence, petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324. Petitioner must also show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, including that evidence alleged "to have become available only after the trial." *Id.* at 327-28. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. The Court notes that actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). *See also Hilliard v. United States,* 157 F.3d 444, 450 (6th Cir. 1998). The actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Schlup,* 513 U.S. at 321.

Petitioner fails to present reliable evidence of his actual innocence. The affidavit from Mr. Wilson does not appear to be based on first hand knowledge, but rather on what another inmate told petitioner who then relayed the information to Mr. Wilson. This double hearsay evidence can hardly be considered to fall under the "trustworthy eyewitness accounts" category of evidence considered under *Schlup* to be credible or reliable.

13

Even assuming, *arguendo*, that the affidavit was poorly drafted and Mr. Wilson, the affiant, was the "inmate" to whom Gudger made his incriminating statements, the evidence does not prove petitioner is factually innocent of the crimes. The Court cannot say that in light of the new evidence presented by petitioner, no reasonable juror would have voted to find him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329.

First, a review of the record shows the trial judge to whom the case was presented did not even rely on the evidence of where the gun was hidden after the crimes in determining that petitioner was guilty beyond a reasonable doubt of complicity to commit aggravated robbery and murder. *See* Doc. 10, Tr. 307 to 312. Therefore, the new evidence presented by petitioner, even if true, would not likely have convinced the trial judge to find petitioner not guilty.

Second, petitioner's new evidence, when considered in light of all the evidence presented at trial, does not establish that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329. The complicity statute requires the defendant to "aid or abet another in committing the offense." Ohio Rev. Code § 2923.03(A)(2). Under Ohio law, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025, 1027 (1982). The Supreme Court of Ohio has held:

> To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v. Johnson*, 93 Ohio St.3d 240, 240, 754 N.E.2d 796, 797 (2001) (syllabus). The

14

defendant's "intent may be inferred from presence, companionship and conduct before and after the offense is committed." *Id.* at 245, 754 N.E.2d at 801 (quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884, 887 (1971)).

Petitioner essentially claims that since the new evidence shows he did not assist Gudger in hiding the murder weapon after the fact, he could not be guilty of complicity. Nevertheless, petitioner's actions before, during and after the offense show he supported, assisted or cooperated with Gudger in the aggravated robbery and murder notwithstanding this newly discovered evidence.

The record shows that before the offense, petitioner assisted Gudger in scoping out the store for the prospect of a robbery. Petitioner visited the store and engaged in a conversation with the store clerk about over-the-counter drugs while Gudger allegedly visited the restroom. (Doc. 10, Exh. 6, State's Exhibit 11A; Tr. 208, 211). The evidence also shows that another customer present at the store observed both petitioner and Gudger in the store and a handgun in Gudger's pants pocket. (Doc. 10 at Tr. 95, 100). The evidence shows that both petitioner and Gudger left the store, then later returned. (Doc. 10, Exh. 6, State's Exhibit 11A; Tr. 214). They parked their vehicle not in the store's parking lot as they had done previously, but in the gap between the store and a used auto lot. (Doc. 10, Exh. 6, State's Exhibit 11A; Tr. 215). According to petitioner, Gudger stated, "Let's go in and see what this guy's got." (Doc. 10, Exh. 6, State's Exhibit 11A; Tr. 215). Petitioner then observed Gudger with a gun. (Doc. 10, Exh. 6, State's Exhibit 11A; Tr. 216). Petitioner observed Gudger cock the gun. (Doc. 10, Exh. 6, State's Exhibit 11A; Tr. 216-217). Gudger entered the store, and petitioner followed. (Doc. 10, Exh. 6, State's Exhibit 11A; Tr. 217). A reasonable inference to draw from this circumstantial evidence

15

is that the two returned to commit a crime.

Petitioner, by his own admission, remained present while Gudger shot the clerk the first time behind the counter, and while Gudger again shot the clerk in the back office. (Doc. 10, Exh. 6, State's Exhibit 11A; Tr. 217-219). After the store clerk was shot, both petitioner and Gudger left the store. (Doc. 10, Exh. 6, State's Exhibit 11A; Tr. 219). They drove to a second store and Gudger handed petitioner some of the money taken from the robbery. (Doc. 10, Exh. 6, State's Exhibit 11A; Tr. 219-220). Petitioner stated he gave the money back, but no time frame is referenced for the return of the money. *Id.* They then both then return to petitioner's apartment.

Several days later, when petitioner was taken into custody and interviewed, he denied he even saw Gudger during the day in question. (Doc. 10, Tr. 202-203). After further questioning by police, petitioner admitted he and Gudger were together, but nothing happened. *Id.* at Tr. 205-206. Petitioner then later admitted to police that the clerk was shot, but stated Gudger was the person who shot the clerk. *Id.* at Tr. 210. When initially questioned, petitioner stated he did not know what Gudger did with the gun. (Doc. 10, Exh. 6, State's Exhibit 11A). Later, petitioner told Detective Rarrick the location where he believed Gudger threw the gun from the car en route to the second store after the murder. (Doc. 10, Tr. 81-82). Several months later, the police received new information indicating the gun was not thrown from the car, but actually hidden in petitioner's apartment behind a wall in the bathroom. *Id.* at Tr. 184-189. Now, petitioner claims Gudger actually hid the gun in petitioner's apartment without petitioner's knowledge. Petitioner's "new evidence" stands in contrast to his earlier statements to police that the gun was actually thrown from the car after the robbery and murder. His "new evidence" does not factually absolve him of involvement in the crimes, but creates an issue of fact as to his

truthfulness about the location of the murder weapon.

Taking the evidence as a whole, including the "newly discovered evidence" presented by petitioner, the Court does not find it is more likely than not that no reasonable juror would have convicted petitioner of aiding and abetting Gudger. A reasonable inference may be drawn from petitioner's admissions to police and his initial untruthful denials and statements that he was not merely an innocent bystander, but aided and abetted Gudger in the commission of the crimes: petitioner was present and conversed with the store clerk during the first visit; he returned to the store with Gudger; he admitted they parked their vehicle in the gap between the store and a used auto lot; he heard Gudger state, "Let's go in and see what this guy's got;" he observed Gudger cock the gun before entering the store; he followed Gudger into the store; he remained in the store during the first shooting and the second shooting; he left with Gudger; he accepted money from the robbery, if only for a short while; and he made inconsistent statements to police about the location of the murder weapon and his involvement. In light of the new evidence presented by petitioner, the Court cannot conclude that no reasonable juror would have voted to find petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329. Therefore, petitioner has failed to establish a credible claim of actual innocence to permit federal court review of his procedurally defaulted claims.

Accordingly, the undersigned concludes that petitioner is not entitled to habeas relief based on the claim alleged in Grounds One through Four of the amended petition because he has waived such claims of error due to his procedural default.

17

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 7) be DENIED with prejudice.

2. Petitioner's request for abeyance (Doc. 17) be DENIED.

3. A certificate of appealability should not issue with respect to Grounds One through Four of the amended petition which this Court has concluded are waived and thus barred from review on procedural grounds because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[4]

4. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 6/6/08

Timothy S. Black
United States Magistrate Judge

---

[4] Because this Court finds that petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim. *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ROY WALLACE,
    Petitioner,

vs.

ERNIE MOORE, WARDEN,
    Respondent.

Civil Action No. 1:07-cv-406

Weber, J.
Black, M.J.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

19